We'll hear argument next in Case 14-844, Bruce v. Samuels. Mr. Shelley. Mr. Chief Justice, and may it please the Court, there are at least three reasons why the Court should adopt what the courts of appeals have called the per-prisoner approach under PLRA Section 1915b2. One, the per-prisoner approach best comports with the statutory text. Two, the per-prisoner approach is the only one consistent with the careful balance Congress struck between deterring frivolous prisoner lawsuits and preserving their right to bring meritorious ones. And three, the per-prisoner approach avoids anomalies and disincentives that Congress could never have intended, disincentives such as discouraging prisoner work by taking 100 percent of their income month after month. I'd like to, of course, start with the text. The key sentence is in the second sentence of subsection b2. It says the following. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court, singular, each time the amount in the account exceeds $10 until the filing fees, plural, are paid. The combination of that singular, clerk of the court, and filing fees, plurals, indicates the per-prisoner approach because it means one clerk is to receive payments even when there are numerous filing fees. Filing fees, the plural, appears in the statute exactly twice. Scalia, Can't there be more than one filing fee for a single court? No, there cannot, not in the way Congress understood the term in the PLRA. If you look to b1 and b3, Congress creates it almost as a term of art. A filing fee includes a filing fee with the word filing in front of fee. A filing fee includes all of the subsidiary costs to start up a case. So a court of appeals, for instance, has a $500 docketing fee and a $5 statutory fee, and that's referred to as a separate fee. Ginsburg What happens if you have the district court makes an order? There has to be a filing fee. And then that fee is not totally paid. In fact, the prisoner loses, so there's a cost award in addition, and then goes up to the court of appeals where there's another filing fee. Does that just, on your reading, does the court of appeals filing fee also have to wait until the district court filing fee is fully paid? Yes, there would be an initial partial filing fee that's paid upon the filing of the appeal. Under subsection b1, there's a 20 percent initial partial filing fee that would be assessed against the prisoner. And that would be across the board, that you always have to pay? Always have to pay that. But the second filing fee, the one from the court of appeals, would line up. So the first filing fee from the district court would be paid off first, and then sequentially the court of appeals would be paid off, but only 20 percent would be taken every month from the prisoner. You wouldn't take 40 percent. If he files enough cases, he's never going to have to pay for it, right? I mean, you know, he files 20 cases. That 20 percent will never, will never come home to roost. What's the disincentive for him, for his continuing to file cases? Well, first of all, it would come to roost back in 1995 when Congress enacted the statute, because the filing fee for a district court case was only $120, and the court of appeals was $105. And so a prisoner who earns, say, $55 or $100, $50 or $100 a month, which is not outlandish given the small wages, could pay off a filing fee in a matter of months under that. It's much higher now. But to get to the rest of your question, Justice Scalia, there are a number of other things in the statute that work in tandem with B-2 to stop that kind of behavior. So there's the initial partial filing fee. Here, she's always going to have to pay that. There's the three-strikes rule, which comes into being. There's the ability of the district court or a court of appeals to sua sponte dismiss under the PLRA those cases that are frivolous. All right. So you say there are other disincentives, but this was intended to be a disincentive. Was this not intended to be a disincentive? It was and it is. And I'm pointing out that it's a very ineffective disincentive if the person keeps filing a lot of cases. Well, it's not an ineffective disincentive because it creates months and months more of additional income being garnished. So it lines up with the others. None of them were anticipated to be wholly barriers to filing a lawsuit. And this one adds with the others and creates a whole scheme where there are added disincentives. But Congress also wanted to make sure the meritorious cases would be brought. And so it didn't want to be overwhelming and put the thumb too much on the scale to kill all of those cases. Kagan. Kagan. Ms. Shilley, can we go back to the sentence that you're relying on? Because I have to admit, I don't understand your reading. The sentence says – I'm taking out some unnecessary words – it says, the agency shall forward payments to the clerk, singular, until the filing fees are paid. Now, that makes perfect sense if the filing fees are all in one case going to a single clerk. But if you're right, and what they mean is the filing fees are in multiple cases, then it doesn't make sense to say that the agency shall forward payments to the clerk. The only way to make that sentence make sense, if the filing fees are in multiple cases, is for the statute to have read, the agency shall forward payments to many clerks, or to several clerks, seriatim. And that suggests not the per-prisoner approach, but the per-case approach. I think that's incorrect, because I think what you should insert, if necessary, in front of the clerk of the court is the relevant clerk of the court. So the prison officials are going to distribute to the relevant clerk of the court. Oh, but then, so that seems right, that to make this sentence work the way you want it to work, and this is the sentence you're relying on. To make it work the way you want it to work, you have to add some language to it. You do not. Because there's still one clerk of the court, and there's always going to be a clerk, because every case the filing fee is paid to a clerk. So there's always going to be the clerk of the court, and in most cases, in all cases, there's only one filing. Kagan. I'm going to say, you know what, even as I look at this, even if you add that language, it still doesn't make sense. The agency shall forward payments to the relevant clerk until multiple filing fees are paid. It's just it doesn't, the two halves of the sentence don't connect there. Well, the filing fees plural, it can't allow for the per case approach, the opposite approach, because filing fees we know means more than one. And so it has to mean more than one, because in B-1 and B-3, Congress used this term of art to mean filing fee encompasses. It's the thing that comprises all of the other fees. And so I would say that the opposite side is the one that cannot make any textual sense out of that sentence, because there's never more than one filing fee from a to a single clerk. Kagan. But Congress doesn't know that. Congress just thinks fees in a case, fees in a case. So then it makes perfect sense, give the fees in a case to the clerk. But you're saying give fees in multiple cases to the clerk, when it's not. It's give fees in multiple cases to multiple clerks. It's give the fee to that clerk that that clerk is owed until all the fees are paid. You keep going back to a clerk until all the fees are paid. So. Ginsburg. Isn't the statute drafted, though, with a single case focus that is 1915-2a, talks about an action? Not true. First of all, the whole purpose of the statute was to deal with multiple filers. So the whole per the Congress comes into it with the purpose of dealing with individuals who file many cases. But second of all, the three strikes rule assumes numerous cases. And I'd also point to section 1915-d, which has the statutory language, the officers of the court shall issue and serve all process and perform all duties in such cases. So there are references to more than one case in various places. But even if it was written in a singular way, in a way to deal only with one case, that really doesn't prove anything against us. It just means you've got to look to other statutory construction tools. Because it would just say that there's going to be an initial partial filing fee in every case, and there needs to be installment payments in every case. And we don't disagree with that. We agree that there are installment payments in every case, and it's just a matter of when. And the statute doesn't answer when, necessarily, right off the bat. But why is the initial fee, the initial partial fee, you say each time you file it, you've got to pay that? Why shouldn't that go the same way? Well, the two sections are written differently. B-1 is very different from B-2. It's a different collector. One is the prison official, the other is the clerk of the court. One mentions filing fees plural, the other only mentions filing fees singular. There's a $10 rule in the second, in B-2, but not in B-1. So they are a little bit different. But even if you don't know, I mean, I can't get anything out of the second sentence to tell you the truth, because I think that a prison is usually within a single district. And so when you're worried about a multiple filer, what he does is he files about 15 cases in the same court. And therefore, it's perfectly understandable why Congress would refer to multiple fees, because there are going to be like 10 of them, if the people that are really worried about it are what's at issue. So I can't get anything out of the second sentence. It's the first sentence that is, it seems to me, both your strength and your weakness. There it talks about after payments of the initial partial filing fee. Okay? It sounds as if it's talking about a case. And so what do we do about that? I mean, there it is. After the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent, et cetera. That's where you have the word fee. Well, first of all, I don't think Congress necessarily had in mind a prisoner who was filing numerous cases in the same court. Because if you look up to A-2, for instance, it talks about the prisoner having to file a statement of his indigency, and Congress talked about it needed to be obtained from the appropriate official of each prison at which the prisoner is or was confined. And the government concedes that prisoners are moved around all the time, and therefore there are numerous districts being filed. Breyer, I don't mean it's exclusive. Sure. I mean, just giving you an explanation as to why they might have used the word fees, even though they previously defined a filing fee of $350. So then let's go to that first sentence in the statutory text in subsection B-2. We don't disagree that after a partial filing fee is assessed, the installment payments will also start to kick in. It's just a matter of do they line up or do they come first. So I don't think under that — I don't think B-2 in that first sentence then would answer the question. Under our theory, you also get a — you also get an installment payment after the payment of the initial partial filing fee. But — Sotomayor, in terms of one of your purposes, why isn't the government's concession that in no circumstance can a fee, 20 percent, be taken until — unless it's above $10? Why doesn't that take care of your problem? Because I don't think the government's position is statutorily allowed. So if you take a situation where, let's say, $11 was earned by the prisoner the previous month, and that's all that was in the account, in that case you'd have to take under the statute, you meet the statutory terms. There's $10 in the account, and you have to take 20 percent. Shall is the word. Shall take 20 percent if there's over $10. Well, there's $11 in there. The government would say, we're not going to take the 20 percent because it's going to send it under $10. So that can't work under the statute. Sotomayor, what the government — I understand, and they'll correct me — is I think they're saying that if you pay a — the initial filing fee, you're down to $8, they can't take another 10 — another 20 percent. Sure. That's how I understood their concession. So that was their alternative position. But even that one won't hurt our purposes argument. Because if you take a prisoner who now, let's say, he has $55 in income, and that's not outlandish, because if you earn $0.35 an hour and you work a 40-hour week, you have $55. In that situation, the first four encumbrances will take $11 each, $44, leaving you at $11. The last one is going to take the whole amount, because you've got a fifth encumbrance and you're over $10. So under even this alternative approach, you take 100 percent of the income every time the income is more than $55. Maybe I should go through that again. Okay. So if you're clarifying it, $11, I guess you'd take $1. All right.  Sotomayor, you have $55, you take $10. The statute says you take 20 percent if it exceeds $10. So if you have $11 in there after the fourth one, you have to take the fifth 20 percent increment. They can't administer it that way. I mean, is there somebody who's administering this that way? Every circuit who has looked at it has described the per-prisoner approach as one that as long as there's $10 in the account, it's the trigger, you can take the whole income. And they're really doing that? As far as I know, yes. Well, the BOP says it is not. I understand the States, where many of the prisoners are, are doing exactly that. And we've cited two district court cases where they went over what the States were doing, and they drain it down to zero. The Newland case says you can drain it down to zero. Torres, Saluk. In fact, that's why the second, third, and fourth circuits all got into this issue of the constitutionality or the purposes, because they said, look, prisoners are going to be left with zero. Scalia That's conceivable to me. I mean, what, is there a constitutional requirement that prisoners be given income while they're in prison? There isn't, I don't think. They're given the essentials, but the point of it is, is if you're in prison. Especially if the fact that they don't have any is their own fault. If they keep filing baseless suits? Well, but the you'd be out of court. You wouldn't be filing baseless suits because you got the three strikes eventually. But Mr. Bruce, for instance, had had six cases before he incurred his first strike even. And so the constitutional dimension that the second, third, and fourth circuits have all adopted goes to the point of you can't put the prisoner in the position of losing 100 percent of the income that he works to earn as a Hobson's choice to filing what may be a meritorious case. They haven't said it's unconstitutional. They've just said the statute leaves you scratching your head. Scalia It's not a Hobson's choice if he forfeits all except $10. That's going to be the difference, whether he has $10 in his account or nothing? Wessler Yes. Yes. And as this Court has said, and as Congress said in 1892 when it enacted the informal pauperous statute, a man who has very little cares about each penny. And in prison, if you have $6, it makes a difference. It makes a difference that month than if you have zero. It's the difference between a four and a five. Breyer Is there a way of interpreting the statute, which I think would make it, I would guess, not in every case, where this multiple thing is likely to arise, is where it files a frivolous case, it's dismissed by the district court, and then he takes an appeal, okay? There we have two. And so the question is, he has to get the filing fee, then the next slot is going to be like 20 percent or 40 percent. But you should leave him with $10. Given the purpose of the statute, which is to stop these frivolous suits or at least make it a little tougher, doesn't it make sense, say, what I just said? Leave him with the $10, but you can take the 40 percent, 20 percent for one court, 20 percent for the other. Now, maybe what I've just said doesn't make sense. To me, it makes sense at the moment, but it would, both leave him with the $10, but allow the clerks to collect the 20 percent for the district court, 20 percent for the court of appeals. Now, is that impossible to bring about? I think it is, given the statutory language. I think, given the fact that the prison officials shall forward payments each time the amount in the account is greater than $10 doesn't allow the prison official to say, I'm going to use it as a floor as opposed to a trigger. And while that might have been the way Congress could have written it, it did not. And given the way Congress did write it, the best approach is that per-prisoner approach that leaves some money to the prisoner for things like phone calls. Sotomayor, I didn't realize the back end of this.  I'm thinking about the courts. Basically, you're saying the last court that brings him over 10 the moment he has over $10, the court who gives no, that doesn't happen, the court who pays a filing fee, he now has more than $10 in the account. That court gets more money than the other courts? No, they all get 20 percent. The way it should work is, is there $10 in the account? If there's $10.01, you then can take 20 percent, a 20 percent installment, perhaps another 20 percent for costs, that's a different issue. But for the filing fees, you take a 20 percent installment, and it goes down to, say, $8 at that point. That's the end of it under the per-prisoner approach that we espouse. Under the per-case approach, the way the courts of appeals at least have understood it, if there's $10.01 in the account and there are five filing fees, that's 100 percent of the $10.01 that goes, 20 percent for each.  It's not true for a Federal prisoner because the Bureau of Prisons says no matter what, the prisoner has to be left with $10. It's a matter of grace. It's not set out in regulation. It's not set out in guidance. It's stated in the public. Do we know to the extent to which the States are following that? To the extent we've been able to investigate that, we've cited two district courts in our reply brief, I think one from Iowa and maybe one from another Midwest State, Maryland and Iowa. Those two cases, the way the Court's decision reads, it indicates that they're looking to see if there's $10.01, and then they're taking, they're going down 20, 20, 20 and 20. And I would also note if you look at Saluk, the Third Circuit, Torres, the Fourth Circuit, and Judge Easterbrook's decision in Newland, they all talk about if there's more than the $10, you take 100 percent if there's five filing fees. Roberts, I don't see how the Bureau of Prisons can do this as a matter of grace. I mean, the statute says what it says, shall. I don't know why they think they can do — they may have their own views on what's good policy, but Congress, it seems to me, has written the statute exactly the way you say. I agree. I agree with that. The only possibility is that alternative approach, they say, where they stop after the first one goes below $10, but that one takes 100 percent of the income and helps us in proving the per-prisoner approach, because in most cases where there's any, any, any job or wage income being earned by the prisoner, you're going to take 100 percent, because the last 20 percent increment will be above the $10. Breyer, you can't interpret it the other way linguistically. You say you forward the 20 percent each time the amount in the account exceeds $10. Well, the instant you write that check, you say, it does not exceed $10, and therefore you can't forward it. So you can't write that kind of a check. I mean, isn't that literally? Well, it exceeds $10 until they cash the check. I would agree with that. Well, now we're getting into the technicalities of banking, which so I think you can read it the way I suggested, if you're not too technical about it. It seems consistent with the language. Does the Fed have a position on this, that Chevron requires us to defer to? No. No Chevron deference here. There's no regulation. There's no guidance. It's a statement and an adversary brief. But, Justice Breyer, I think that there are a number of machinations that can be gone through in order to defend this idea or that idea, and the government comes up with alternative ones that they're not even using to try to deal with the plural filing fees, for instance, but our approach is much simpler. Our approach is, you read the statute, the way it states, a shall, you know, shall the prisoner, you don't look to see if the payment is going to be under $10 afterwards, but look to see if it's over as a trigger and then pay. In addition, you don't have a lot of other problems with our approach. You just figure out which one was first, which one was second, which one was third. What happens, I think this, Mr. Bruce, has multiple filings, right? At this point, yes. Something like how many, 17? 19. But the first. Ginsburg. So realistically, those later fees are never going to be paid because he's going to be released from prison somewhere along that chain. First of all, Mr. Bruce, it didn't incur the last seven or so have not been filed, essentially, because he had had three strikes by the 12th. So there's really only 12 lawsuits we're talking about that could have filing fees. But the answer to the question, Justice Ginsburg, of whether he's never going to pay those, again, I would go back to 1995 and say Congress thought, well, they could be paid relatively quickly if the filing fees were lower. But you touch on a question that is unsettled in the lower courts, which is, does the amount come due at the end of when the prisoner's sentence ends? And the courts of appeals are divided about that, with the Fifth Circuit saying, yes, it does come due, and you have to come up with some kind of a plan with each of the clerks to which you owe money, and you shall pay it off. Other circuits say, it is, it does come due, but it only comes due and you have to pay it if you're not in forma pauperis at the time the government seeks to collect it after you're out of release. So I don't think it's correct to say, at least as a matter of law, it's settled as to whether these filing fees forever go away once the prisoner leaves prison. I had also started just talking about the difference of the different problems of the per case approach that ours avoids. And the, as I mentioned, the per-prisoner approach allows you to line up the fees one after another. You just have to figure out which one was incurred first, second, third, fourth. But under their approach, what happens after the fifth one? You have five, it takes 100 percent of income, and at that point, well, the sixth one becomes our approach. If you have six, seven, eight, it then becomes this sequential approach that has all the problems they say are present. Ginsburg's position was you can't get blood out of a stone, so when it's 100 percent, that's it. Six, seventh, and eighth, we'll just have to wait. They sit in line. What the government says at page 30 of their brief is that that gets deferred, deferred until one of them gets paid off. So then you have to figure out, well, one of them got paid off, so which one do you switch in, and how much do you switch in, and then just the problems start to multiply. Why do you pick the earliest? I mean, all of them, all of them are owed. Why don't you pick the nearest court? Well, you could. You could pick the nearest court. You could pick the last one, the most the most current. But the way the courts of appeals have looked at it, they've looked at in time the first. And I don't think the government disagrees, because at least when you get to the sixth one, it's they treat that one as being deferred under their approach with the first five being paid. Roberts. Is he on the hook for the filing fees here? He is not. He is not. Why not? I don't understand the court to apply the PLRA for its cert petitions, for instance. And in any event, I believe his filing fee was paid in this. Oh, he is subject to a filing fee in this case, and he did pay it. But I don't understand the court to apply the PLRA to cert petitions. So one last point I wanted to make is that I think it is often thought that a prisoner who has 12 filing fees or 10 filing fees is a recidivist prisoner. But that's not the case. As the Second Circuit noted in the Whitfield case, that single case produced five encumbrances. There was a district court appeal. There was a district court case, a Second Circuit appeal. There were two cost awards from the district court and the court of appeals. And there was a second appeal. There were five encumbrances in one single piece of litigation. So these encumbrances can add up quite quickly. And you can get up to five, seven, eight. In that case, it was a meritorious case, the Second Circuit said. It wasn't a frivolous case. The prisoner didn't win, but it was a case that wasn't, as Justice Kagan used in the last argument, wasn't a laughingstock case. These were — it was a meritorious case in the sense that it was one that could be brought by any other American that the prisoner brought. So I would like to reserve the remainder of my time for rebuttal. Roberts Thank you, counsel. Ms. Zaharsky. Zaharsky Mr. Chief Justice, and may it please the Court, this statute is written from the perspective of a single case. And what I mean by that is that for each action or appeal, it provides a list of things for the court to do, to check for the affidavit of indigency, to check for three payment of filing fees on an installment schedule. So what we're talking about here is subsection B, which is the filing fee provision. And it says, first, that an IFP prisoner has to pay the full amount of each action or appeal, talking about a single action or appeal, and then it sets out an installment plan, which is an initial payment and a monthly payment. So we're at the point where Petitioner agrees that the initial payment is for each case, but he says that the statute somehow shifts perspective to all of an inmate's monthly payments. And we just don't think there's any kind of clear explanation in the statute that does that. We think the burden should be really on him to show a shift from a single case to all of the cases, and it wouldn't make sense to do that. I think Justice Scalia made the point in this discussion that there just wouldn't be any marginal deterrence if an inmate could file as many lawsuits as he wanted and not make any additional claims. Breyer But he pointed to the word fees. What about the word fees? Because that shows. Zaharsky Right. What Petitioner says is that the word fees, plural, always means more than one case. And we know from the text of the statute that that's not true, because there are several places where Congress says fees and it's referring to a single case. So, for example, in subsection B-3, Congress talks about the amount of fees permitted by statute for a civil action or an appeal. In B-1, it talks about any court fees required by law for an action or appeal. Similarly, in A-1 and A-2, it talks about fees, plural, for a single action or a single appeal. And to be clear, we think that in this statute, Congress used fee and fees somewhat interchangeably in the way that people do out in the world, that people would say attorney's fees, an attorney fee award, fee shifting, we're shifting all the fees, that sort of thing, that that's just common usage and that the single plural fees in subsection B-2 just does not provide the kind of strong indication that would be necessary to overcome the real thrust of the rest of the statute, which is that it's something that a court does for each of these cases. It sets out this payment plan. It does each of the other things that are set out in the statute. Roberts I'm not terribly persuaded by your deterrence argument. I mean, no statute pursues its purposes at every cost, and maybe Congress decided they could they didn't need to take the last $0.23 an hour the prisoner earned to promote the deterrence when they have all these other anti-filing provisions in the law. Well, this is the only provision that provides a financial deterrent. There are other provisions like the three strikes provisions, et cetera, but this is the one, and this was in the record where members of Congress said it makes an inmate stop and think, is this lawsuit worth the cost? And the amount that Congress Roberts Yeah, but Congress is talking about, okay, they have to pay the filing fee. Certainly Congress didn't focus, I wouldn't think, on whether it's per case or per prisoner, because it's really quite unclear. Well, we think that Congress did make that decision when it wrote the statute from a perspective of a single case. Congress knew it. Roberts Well, yeah, I wanted to talk about that. The first reading, two struck me as different than one, because in one you are talking about, oh, this is what the court should do, but on two you say, this is what's required of the prisoner, and it just says up to 20 percent. Now, I know one says required two, but it immediately shifts, it's where he's required to pay the whole thing, and that's the important point. But two, it says this is what's required of the prisoner. Monthly payments of 20 percent of the preceding month's income. To me that seems to be more prisoner-focused than the case-by-case. But it's linked to subsection B-1. This whole thing is talking about what happens in a specific case. It starts by saying when a civil action or an appeal is filed, you shall pay the full amount of the filing fee, and here's the way to do it. And subsection B then triggers subsection CB-1, then triggers subsection B-2. We think Judge Srinivasan got this exactly right in the opinion for the D.C. Circuit, where he said that when you start reading B-2, it is triggered from B-1, and it continues the per-case focus, that it's talking about first we have an initial partial payment for one case, and then we have monthly payments to pay off the balance of that case. And that's just the way it is. Roberts, I'm not sure that's responsive to my point. I guess what I was saying is I don't think it carries forward the case-by-case basis, because it speaks solely of what's required of the prisoner in a way that doesn't address case-by-case at all. I mean, that's why this is such a confusing statute. Well, we think the reason that we think it does, just to be as clear as possible, is because of the language that starts subsection B-2, which is after payment of the initial partial filing fee, which is for one case, then the prisoner is required to make monthly payments, which is to pay the remaining amount, because we know he has to pay the full amount for one case. And the issue is that the prisoner is required to pay the remaining amount of the proceeding month's income. To me, I — well, I would think it at least as reasonable as you're reading to say when you look at what is required of the prisoner, 20 percent of his income, that doesn't have anything to do case-by-case, because what you would require, of course, is that he pay 40 percent if there are two cases, or 60 percent if there are three, or all of it if it's above $10. And I think he — someone looking at that may say, no, no, he's only supposed to pay 20 percent of his income. But this part of the statute and all of the parts of the statute really are talking about the perspective of a single case, and we think the 20 percent amount makes sense in that regard, because, as one member of Congress said, and this was quoted in the D.C. Circuit's opinion, the filing fee of 20 percent is small enough not to deter a prisoner with a meritorious claim, but it's large enough to deter frivolous claims or multiple filings. So that the 20 percent essentially leaves room for multiple filings, that you could apply it more than one time when a prisoner has a second case, a third case, a tenor. Roberts, Well, yes, but he doesn't get off the hook for the other ones. It just has to pay it further down, you know, it's like a mortgage. I mean, you get 30 years, you have to pay it further down. If you're on 15 years, you have to pay it less. I mean, it's not like he's getting off scot-free. Saharsky Right. I understand your question, but I think that there are a couple of problems with that. One is that there's nothing in the statute that suggests that you would delay the payments, and it doesn't make sense in terms of the statutory purpose to delay them. As Judge Easterbrook's opinion for the Seventh Circuit said, if you want to have a pay-as-you-go system where there is an immediate cost to each individual case, the person needs to have an obligation to start paying right away, not five years in the future or perhaps never. And then that's- Roberts Well, he pays the 20 percent in every case right away. Saharsky Right. But that's a one-time payment, and it could be quite small. And that's very different from having an ongoing monthly payment that starts right away and that you have to pay. But I do want to address another point that I think your question raised, which is, are prisoners ever going to be paying these amounts, particularly where they have filed numerous cases like the individual in this case? And I think the answer is no, for two reasons. The first is a practical one. The second one is a legal one. I guess I'll start with the legal one, that numerous courts that have considered this issue have said that once a prisoner is out in the world and is no longer a prisoner but wants to continue his case, he can try to qualify for regular IFP status and no longer have to make his payments. So potentially he's not making those payments. And regardless of how you would decide that legal- Roberts If you agree with that interpretation? Saharsky It's not something that we've taken a position on in this case. Roberts Well, then I don't think it's fair to rely on it. Saharsky Well, then I do think it's fair to rely on it in light of the fact that no one is collecting, no one is there's not any centralized mechanism to collect now, and that's really the second point that I wanted to make, which is regardless of how you would resolve that legal question, and actually the reason that the administrative office has not, so far as we know, taken a position on that is because there are serious practical problems to collecting. One of those problems, when you look at the statute, subsection B allows you to take money from the trust account, so it's fairly easy to collect while the individual is in prison. But once the person is out in the world, courts, each individual court trying to collect filing fees that are, that the inmates, the former inmates on the hook for is quite a difficult thing. We have spoken with folks from the administrative office who tell us that there is not now any centralized system for trying to refer those obligations for Treasury, and I think you could imagine how cumbersome that would be. So to think that potentially paying 5 years down the road or never paying is any kind of marginal deterrent I think would be wrong. We think that Congress knew that there were multiple filers out there and that if they were going to file more lawsuits, they should pay more. And just to be clear about what Congress was saying here, no one is precluded from going to court. All Congress was saying is something very reasonable, which is if you have funds available and you continue filing more lawsuits and appeals, you should have to pay, you should have to contribute. And we think that that makes complete sense. Kagan. Kagan.  Kagan and Mr. Harske, can I go back to the $10 rule and the BOP policy with respect to this? I think it was the Chief Justice who said that he didn't really understand, and I share his lack of understanding about how the BOP is actually doing this given the language of the statute. The statute says you know, shall forward payments each time the amount in the account exceeds $10. So that suggests to me that if you are looking at an account with $10.01, you make the next payment. And I understand from your brief that that's not what the BOP is doing, and how can the BOP be not doing that? Well, a couple of answers. First of all, we think that that language that you cited can be read multiple ways, as I think the discussion with Justice Breyer perhaps suggested, that it could mean that there's a $10 floor or it could mean that you could start making payments at the $10 and then go below the $10. The BOP has longstanding, has taken the position, longstanding position, that you have a $10 floor that is not in any kind of regulation or published guidance. The way that we do it is that we have a database that is basically for inmate trust accounts. It's just an electronic system for having money come in and out of the accounts, and we have had that $10 floor in there since that database was set up in 2001. But we think the statute could be read both ways, and we think it is more consistent with Congress's intention to leave the $10 in the account. Scalia, that's probably right, but how can it be read that way? Tell me how it can be read that way. I'm saying you can't touch $10. In all cases, $10 will always remain in the account. How can you read it that way? Well, because when it says exceeds $10, I think you could read it as that it can't kind of the flip side, that you can't go below the $10, or you could say that you could start at the $10. Read the language. Read the language. What language produces that result? Right. We think that it is, when you say it exceeds $10, that that means that you can't There's the flip side of it, that you can't go below $10. But to be clear, that doesn't follow. It says you can take 20 percent if the account exceeds $10. If the account exceeds $10, you take 20 percent of the account. Well, Justice Scalia, that's what it says. Right. If you, we think that it can be read both ways, but this is, if you disagreed about that, we don't think that that issue resolves this case for a number of reasons. Anyway, why can't you read it that way? You forward the payment each time the amount exceeds $10. Forwarding it consists of pressing an electronic button. And so the instant you press that button, it does not exceed $10. And there we have it. So there is a way of construing the language which is consistent with the obvious purpose to me, which is to leave this prisoner with at least $10. Well, that's what we think. We think it can be read multiple ways. And so far as we know about the experience, it has been read multiple ways. There are cases in the courts of appeals that have read it one way versus the other. To be clear, though, these cases are not ones that have gone through any detailed statutory analysis, not even as much detail as this Court's discussion at argument today, but have just said in an offhand line, either you can go below the $10 or you can't. They've kind of gone both ways on that. In terms of experience, we know from the Second Circuit's case that's cited in the briefs, Whitefield, that New York did not go below the $10. I asked counsel of record for the States. The States filed a brief on our side of this case, and the counsel of record is a solicitor general of Michigan. He said that Michigan does not go below the $10. My friend on the other side has suggested that the States do. Sotomayor, does all of this bind all of the States, all of the prisons? Because your adversary says that some are going below the $10. I'm not sure that that's true. He cites two cases. One is they're from Maryland and from Iowa. One of the cases said that there was a – that it went below the $10 in one case, but it didn't say that that was the State policy. You know, I don't know if it was. And then the second was an individual accounting clerk who had gone below the $10 and who had done it manually. So I don't know that that represents any kind of policy either. But if I could step back, I think it is not necessary for this Court to resolve the $10 issue to resolve the question presented, because the question is just, should an inmate who files more cases have to make monthly payments? And just as – just parenthetically, to highlight why the Court doesn't need to resolve the $10 issue to resolve this case, this was not an issue that Petitioner briefed before the D.C. Circuit. It's not anything that the D.C. Circuit's opinion addressed, and it's not something that was in the certiorari petition so well. Scalia, and that issue could come up in the very first payment, couldn't it? If the guy has $10.01 in his account, the very first payment could raise that issue. Yes, that's true. Scalia, so it's not an issue presented by the question of whether you use the per-case or per-prisoner approach. I completely agree. It's a problem either way. However you resolve the question presented, that would still be a separate question, one that the courts of appeals have not considered in any level of detail. Mr. Kucinarski, I find – I think others may, too. I find the issue that's before us very difficult to resolve based on the statutory language. Is there any doctrine tantamount to the rule of lenity in interpreting a criminal statute that applies here? Because the thing that strikes me most is the extreme harshness of your position. We're talking about earning 23 cents an hour, filing fees of $350, $505, and the money is used to, for what, phone calls to family and friends, stamps for letters and to buy books. And you're going to take the last, you know, whatever, so that someone who's in there for 20 years can't even buy a book. It seems very, very harsh. And you seem to be willing to interpret the ambiguity in the statute to save the last $10, but you're unwilling to interpret the ambiguity, what I think, at least I regard, is the ambiguity in the statute to allow prisoners, I mean, they're prisoners, they're not, perhaps not entitled to any grace, but who in some States earn 10 cents an hour. You're not willing to interpret that ambiguity in a way that allows them to keep that so they can pay for phone calls to their family. Well, a couple of answers. First of all, we think that this is not, this question of a person having so little money in their account only arises in the case that you're talking about someone who has filed five or more lawsuits, which is not the ordinary case. I mean, it is obviously a case to consider, but at least in the BOP's experience, the vast majority of people who have orders that are owed are for one lawsuit, two lawsuits. Most of the court of appeals cases below are like that, et cetera. Putting that to the side, of course, this statute never prevents a prisoner from bringing a meritorious case because of the safety valve provision. We also interpret the $10 amount to leave money in the account. There's also, of course, administrative remedies, which administrative exhaustion is required, so that helps resolve any questions about making sure that claims are heard. And in fact, the BOP does have the discretion to allow phone calls, et cetera, to indigent prisoners, also stamps, et cetera, et cetera. So in terms of what you potentially perceive as harshness, this only arises in cases where an inmate is filing so many cases that potentially a large portion of his income is being used to pay filing fees, and really that's the thought. Roberts, if you're there for 20 years, maybe you should let them buy a book. Right. And this, again, this situation there, I think most prisons actually have libraries that books are available and the like. The Court has had some cases about libraries. Roberts, I'm sure they're very good libraries, too. Well, just to be clear, you know, this is a situation that only arises in the fairly atypical situation. We — it's true that the statute does not specifically address the situation of a prisoner with five lawsuits or six lawsuits and orders, et cetera, but we think the reason that that is and that the Seventh Circuit suggested in one of the early opinions after the PLRA was enacted is because Congress thought that the three-strikes provision was going to prevent all of these lawsuits, but it doesn't prevent some of them. Scalia A lot of prisoners buy books. I mean, does Amazon really make a lot of money off these people? I don't think so. I can't say. You know, the experience that we have in this case, for example, might be good to highlight, which is Pinson, the individual who has filed more than 100 cases, gets regular deposits into his account, had been using them to buy books and other materials. Those are in the joint appendix, starting on pages 55, 56, et cetera. So it shows that prisoners are able to, even Pinson, who has filed over 100 cases, is able to pay those amounts. And just to clarify, I think the Court is thinking of a situation of, you know, a prisoner who has 10 cents of income or $10 of income, but we don't think that that is the typical situation. Pinson's account at the time he filed shows that he received an average of, I think it was $48 a month of income. I have asked the BOP for statistics just because I was curious about what is the median income that's received, what is the median deposit. They said that for the past fiscal year, the median income an inmate receives is approximately $120 a month. So, in fact, with that, if an inmate has 20 percent that he's paying towards filing fees, he could pay them off at a reasonable rate. And we think that that's just really a much better alternative in terms of what Congress intended. Kagan. If you have $50 and you have five lawsuits, the $50 is gone, assuming that the BOP's policy is not uniform and maybe is not statutorily authorized. Yes. I think that that is the implication of it, and we think that that is what Congress intended. I am not sure if the Court is interested in such information, but we actually did go ahead and just look in our database to see how many inmates have one PLRA order that they're paying as opposed to five orders that we're paying. And what we found just checking last week was that inmates, there are 944 inmates of the over 200,000 in the Federal system who are paying on one order and only 60 inmates of the over 200,000 who are paying on five or more orders or who have six, and then 42 inmates who have six or more orders. So this actually is a very small problem, at least Federally, and we would not want this very small tail to wag the dog of this statute that is clearly intended by Congress to make sure that inmates who are filing frivolous lawsuits have a financial disincentive to do so.  Sotomayor, let me be clear about your policy, and I think your adversary agrees. Under A, that 20 percent has to be paid on all five cases, and whether the amount is above 10 or the amount in the account is above 10 or below 10, correct? Correct. So those five cases would always wipe out the $10?  It is not an impediment to the initial partial filing fee. It is only in the second part of it. And so the $10 floor starts once the account goes up. You have to abut them. You have always $10 in your account, but any dollar that goes into your account after that, 20 percent has to be paid. Right. But we think, assuming that it's over the $10, but we think that there's, you know, that there's at least $10 in the account, it would wait until there was $10 in the account. So if I'm understanding your question correctly, we would wait until there was $10 in the account. This is just a matter of the case. But you would take 20 percent. Let's say there's $10 and there's $11. The one extra dollar is paid to whom? To assume there's five cases there. We would, if we can't pay all of the five cases as we believe Congress intended, we would pay the oldest lawsuit. The oldest, and I don't mean that by filing date, I mean the oldest order that was entered. Sotomayor, did you take that entire $1? Yes, because the statute says to pay 20 percent per case, so we would try to do the closest thing that we could to that. I think as Justice Ginsburg said, you can't get blood out of a stone. There comes a point at which if there's not funds, we can't pay. But as we understand the statute, and we think it makes perfect sense in terms of what Congress wanted, if you have money available and you continue to file more lawsuits and get orders entered, that the inmate should have to pay for them. So at the end of the day, we think that the D.C. Circuit got it right, that both when you look at the specific text of this provision, which is subsection B about filing fees, but really the entire statute written from the perspective of a single case, a checklist for a single case, that Congress wanted inmates who are filing more lawsuits to pay more. And we think that that makes sense, and that also, and I want to, this I think is a partial answer to one of the prior questions of the Chief Justice in terms of interpretive canons, et cetera, that it's consistent with what this Court did last term in the Coleman case. In the Coleman case, the Court was considering the three strikes provision, but it recognized that that provision is written from the perspective of a single case, a single action or appeal. You could get a strike for the action. You could get a strike for the appeal. And the same thing we think is true for the filing fees. You could owe the filing fees for the action. You could owe the filing fees for the appeal. And we think that that makes complete sense. So unless there are further questions, we would urge the Court to affirm the decision of the D.C. Circuit. Roberts. Thank you, counsel. No, you have four minutes remaining. Thank you, Mr. Chief Justice. First of all, with respect to the hypothetical that Justice Sotomayor asked, in fact, I think if the account had $11 in it, the government's position would lead to none of the clerks of the courts being paid, because the first payment would take the balance under $10. So that seems, again, as a number of justices have mentioned, other than Justice Breyer, a perverse reading of the $10 rule. But I also want to take on the idea that this is the only provision in the statute that provides for a financial effect on the prisoner when filing a lawsuit. No, as the Chief Justice mentioned, the initial partial filing fee applies in every case. No $10 rule, no minimum. So that is an immediate financial incentive, not to file a frivolous lawsuit, because money is going to go immediately. And if it doesn't go immediately, it's a debt that gets paid sequentially, much like the per-prisoner approach would adopt for B-2. But B-2 then takes a longer-term point of view. B-1 is an immediate financial disincentive. B-2 is the longer financial disincentive, month after month with the installment payments. I also want to take on the idea that fees and filing fee appear interchangeably in the statute. They do not. Ms. Zaharsky mentioned the word fees, but fees unadorned with the word filing in front of it appears differently than does the word filing fee. The plural filing fees appears in exactly two spots, B-2 and then in the cross-reference to the cost section, I believe it's C, in the F section, where it says that costs shall be charged the same way as filing fees. They both use the plural filing fees. So this was purposeful. Congress used the plural filing fees only twice, and that's because I think they were talking about the numerous cases being paid to a single clerk. And finally, I'd like to say it has often been said that the measure of a society is not how it treats its outstanding citizens, but how it treats its weakest. Here there's no — it's criminals. Here there's no real reason to pile on to prisoners with this additional onerous financial incentive when the other aspects of the PLRA do the work of deterring frivolous lawsuits along with the disincentive that's provided under the per-prisoner approach. We would ask that the Court reverse the D.C. Circuit. Roberts. Thank you, counsel. The case is submitted.